United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 96-4190

Independent Business Forms, Inc.,    *

        *

    Plaintiff - Appellant,    *

        *   Appeal from the United States

    v.    *   District Court for the

        *   Eastern District of Missouri.

A-M Graphics, Inc.; A-M International;    *

Harris Graphics, a Division of A-M    *

Graphics,    *

        *

    Defendants - Appellees.    *

_____

Submitted: September 8, 1997
Filed: October 14, 1997

_____

Before FAGG, LAY, WOLLMAN, Circuit Judges.

_____

LAY, Circuit Judge.

This appeal involves a claim of fraud arising from the sale and purchase of two printing presses. The purchaser of the presses, Independent Business Forms, Inc., a Missouri corporation, (hereinafter referred to as "Independent") brought this suit against the sellers, A-M Graphics, Inc., A-M International, and Harris Graphics, a division of A-M Graphics, (collectively hereinafter referred to as "AM-G").

Independent recovered a judgment in district court in the amount of $285,000 in compensatory damages and $1,000,000 in punitive damages. The trial court granted AM-G's post-verdict motion for judgment as a matter of law, vacated the judgment, and ordered a conditional new trial. This appeal followed.

Factual Background

In 1989, Robert Hirst and Allan Schmidt formed Independent to expand the business forms manufacturing operations of their existing company, IBF, Inc. The business was located in St. Louis, Missouri. Hirst and Schmidt intended to purchase from a printing press manufacturer two new printing presses and two new collators for Independent's new facility. At that time, AM-G was in the business of selling printing presses. Upon learning of Independent's decision to purchase its presses from a competitor, AM-G offered to sell Independent two Harris presses and one new collator and to convert one of IBF, Inc.'s existing collators to operate with the new press.

In March 1990, AM-G installed the equipment; the conversion of the collator was not completed until August 1990. From the outset, Independent experienced difficulty in producing business forms on the new presses. Several years later, Independent discovered an AM-G report indicating the Harris 500H(T) press cylinder was not built to specification and as a result, caused the presses to operate inefficiently. According to Independent, documentary evidence showed that AM-G knew about the cylinder defects when it sold the presses to Independent and failed to disclose this information to Independent. Independent also alleges that prior to selling Independent the presses, AM-G decided to use the remaining stock of cylinders knowing that the cylinders were defective.

Independent brought this suit against AM-G in state court for fraud, and AM-G subsequently removed the action to federal court. AM-G moved for summary judgment on several issues, including: (1) dismissal of four of the seven

misrepresentations set forth in Independent's complaint relating to the quality and performance of the presses on the grounds that they constituted mere puffing and therefore were not actionable in a claim of fraud,[1] and (2) dismissal of Independent's claim for lost profits. The district court granted AM-G summary judgment on both issues. Before trial, the district court also granted AM-G's motion in limine to exclude all evidence regarding the defective cylinders. The trial court submitted plaintiff's fraud claim relating to the set-up and maintenance, training of personnel and the conversion of the collator. As indicated, although the plaintiff was awarded both compensatory and punitive damages, the district court vacated the verdict and granted AM-G judgment as a matter of law.

Discussion

On appeal, Independent primarily urges the district court erred in failing to allow its claim of fraudulent concealment concerning the defective cylinders in the presses. Independent also urges that its proof was sufficient to support its fraud claims and damages submitted to the jury, as well as its claim of punitive damages. Finally, it urges the court erred in excluding its evidence of loss of profits. Upon review of the overall record, we find the district court erred in disallowing Independent's claim and

---

[1]According to Independent, during the negotiations preceding the sale of the equipment, AM-G made several representations regarding the quality and performance of the Harris presses and the training, support and other services AM-G would provide to Independent. Specifically, AM-G represented that: (1) AM-G's equipment was of a higher quality and would last longer; (2) the equipment did not require as much maintenance and had limited down time so production would improve; (3) the equipment had a quicker set up and it was more profitable to run; (4) the equipment would improve production from a quality and quantity standpoint; (5) AM-G would provide all necessary training to Independent's employees; (6) AM-G would provide all necessary set up and maintenance personnel; and (7) AM-G would provide all necessary expertise and personnel in the conversion of a 550 collator. (Pl.'s Comp. ¶ 10).

proof of fraudulent concealment. In addition, based on the testimony of AM-G's own expert witness, as AM-G acknowledges, the damages the jury did award were related to the excluded evidence of the defective cylinders. On this basis, even assuming *arguendo* that the damages awarded otherwise lacked evidentiary support, as determined by the district court (an issue we need not decide), Independent is entitled to a new trial due to the district court's error in excluding the evidence of the defective cylinders. As we later discuss, we also find the trial court erred in excluding damages relating to loss of profits.

In opposition to AM-G's motion in limine to exclude the defective cylinder evidence, Independent argued its fraud claim encompassed the allegation that AM-G fraudulently concealed from it the defective nature of the presses and the defective cylinder evidence was relevant to that allegation. In rejecting Independent's argument, the district court stated:

> It is clear to the Court that plaintiff is seeking at the eleventh hour to change the nature of its case. Up until the pretrial conference, plaintiff's case was based on the theory that defendants made specific, false representations in order to induce plaintiff to purchase defendants' equipment. *The recent allegation that fraudulent concealment occurred is not subsumed within plaintiff's fraudulent inducement theory.* (R. 380-81) (emphasis added).

Missouri law governs the transaction between the parties. It is well-established under Missouri law that the concealment of a fact which one has a duty to disclose is encompassed within a fraudulent misrepresentation claim. Reeves v. Keesler, 921 S.W.2d 16, 21 (Mo. App. 1996); Seidel v. Gordon A. Gundaker Real Estate Co., 904 S.W. 2d 357, 361 (Mo. App. 1995). This court has observed that in Missouri, "a failure to disclose a material fact is considered to be ‹an implicit representation of the nonexistence of such fact on which a party may rely, but only if the alleged fraud-feasor has a duty to speak.'" Walsh v. Ingersoll-Rand Co., 656 F.2d 367, 369 (8th Cir. 1981)

-4-

(quoting McMahon v. Meredith Corp., 595 F.2d 433, 438 (8th Cir. 1979)); see Slater v. KFC Corp., 621 F.2d 932, 936 (8th Cir. 1980). This observation simply means that false words or statements are not the only means by which a fraud-feasor may fraudulently induce a party to act.

> A representation is not confined to words or positive assertions; it may consist as well of deeds, acts, or artifices of a nature calculated to mislead another and thereby to allow the fraud-feasor to obtain an undue advantage over him. . . . If he fails to disclose an intrinsic circumstance that is vital to the contract, knowing that the other party is acting upon the presumption that no such fact exists, it would seem to be quite as much a fraud as if he had expressly denied it, or asserted the reverse, or used any artifice to conceal it, or to call off the buyer's attention from it.

Vanbooven v. Smull, 938 S.W.2d 324, 328 (Mo.App. 1997) (quoting Barylski v. Andrews, 439 S.W.2d 536, 539 (Mo.App. 1969), quoting Lindberg Cadillac Co. v. Avon, 371 S.W.2d 651, 653 (Mo. App. 1963)).

In the present case, the district court viewed Independent's fraudulent concealment argument as a new claim not subsumed within Independent's fraud claim. In so doing, the district court failed to acknowledge that a single set of facts may give rise to a claim for fraud based on both affirmative misrepresentations and concealment of facts. Despite the district court's ruling relating to the four misrepresentations on summary judgment, the fraudulent concealment of the defective cylinders still formed, in part, the basis of Independent's fraud claim. In its complaint, Independent alleged, in part, the following:

> 14. That the assurances, promises, guarantees, inducements and representations of AM-G at the time they were made to IBF were false, and known to be false by AM-G, but were made for the sole purpose of inducing IBF to enter into purchase agreements, defraud IBF of

-5-

$745,000.00, *to induce IBF to purchase defective presses from AM-G*, and to defraud IBF of funds paid to convert a collator.

17.    That the representatives of AM-G, which had made the above representations, ignored phone calls by IBF, refused to send trained and adequate personnel to IBF, *refused to replace the defective machines*, and failed to provide any training to IBF. (R. 22) (emphasis added).

These allegations were sufficient to place AM-G on notice that Independent considered the concealment of the cylinder defects as part of its fraud  claim.

The district court concluded  the defective cylinder evidence was relevant only to show the affirmative representations made by AM-G were false.  This conclusion fails to appreciate that, under Missouri law, fraudulent inducement may be accomplished with either a knowingly false representation or a concealment of a fact for which there is a duty to disclose.  The latter is a substitute for the former.  We therefore conclude the district court based its decision upon an erroneous interpretation of Missouri law.

In support of its decision to exclude the defective cylinder evidence, the district court stated Independent failed to allege fraudulent concealment in its complaint. However, we find, given the procedural history of this case, Independent did allege facts sufficient to support a claim for fraud based on fraudulent concealment.  The district court found AM-G objected untimely to the lack of particularity in the pleadings under Federal Rules of Civil Procedure 9(b).[2]  Under the circumstances, the sufficiency of the allegations in the complaint should have been evaluated under the notice pleading

---

[2]Federal Rules of Civil Procedure 9(b) requires a plaintiff to allege with particularity the facts constituting the fraud.  If this heightened pleading rule had been required by the district court, the court's concern would have been obviated.  The court's ruling excused Independent from pleading with particularity and yet faulted it for failure to do so.

standards. Under Fed. R. Civ. P. 8(a), a claim need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Independent's complaint satisifed this requirement.

Furthermore, the discovery conducted by both parties placed AM-G on notice of Independent's dual-natured fraud theory. Through interrogatories and requests for document production, Independent sought detailed information regarding the engineering design of the Harris 500H(T) press cylinders and the persons who knew about the cylinder defects. (Independent Business Forms' First Set of Interrogs. to Def. A-M International, Nos. 14 & 15). In its supplemental interrogatory responses, Independent informed AM-G: "The cylinders were manufactured out of engineering specifications as discovered by Don Bastian in his report dated April 27-29, 1992."[3] Finally, both parties engaged expert witnesses to testify regarding the cylinders. (Appellant's Br. at p. 11). It is apparent both parties were well aware of Independent's allegations that AM-G had knowingly sold defective cylinders to Independent, and that AM-G concealed the defects at the time of the sale.

AM-G urged at oral argument that it owed no duty to Independent to disclose the existence of the cylinders' defects. It urged that in the absence of a fiduciary relationship, it could not be held liable for fraudulent inducement. However, a duty to disclose may also attach where one of the parties has superior knowledge which is not within the fair and reasonable reach of the other. See e.g. Vanbooven v. Smull, 938 S.W.2d at 328. This is a classic case of the latter situation. It is clear from the evidence that AM-G had superior knowledge as to the defective cylinders. In any event, we need not dwell on this argument as an issue for purposes of this appeal because it is not raised or discussed in appellees' brief.

---

[3] Supplemental Answers to AM International, Inc.'s First Set of Interrogs. Directed to Pl. Independent Business Forms, Inc., dated March 21, 1996, Response No. 4.

Before and during the trial, the district court ruled in numerous instances that a claim of fraudulent concealment is a separate and independent cause of action from a claim of fraudulent inducement. This misinterpretation of Missouri law led the district court to grant AM-G's motion in limine and to deny the numerous offers of proof made by plaintiff during the trial. However, the evidence regarding the defective cylinders was relevant to the overall fraud committed by AM-G. This evidence was critical to Independent's case at trial. Without it, Independent could not prove the full extent of AM-G's liability or the true amount of its damages and thus could not receive a full and fair trial. Because the district court's ruling severely prejudiced Independent's ability to receive a fair trial, we vacate the judgment as a matter of law and remand this case for a plenary new trial.

Independent argues the district court abused its discretion by denying Independent leave to amend its complaint to include a more specific allegation of fraudulent concealment. We need not address this issue because, in light of the discussion above, Independent did not need to amend its complaint in order to pursue its claim of fraudulent concealment.

Loss of Profits

In view of our order granting a new trial, we find it necessary to pass on Independent's claim for lost profits. Independent claims the district court erred in granting AM-G's motion for summary judgment on its claim for lost profits. The district court concluded Independent's claim for lost profits was too remote and speculative to allow recovery because Independent (1) did not have a sufficiently long operating history to access lost profits, and (2) failed to provide substantial evidence upon which to form an estimate of the lost profits. The district court also determined Independent could not rely on IBF, Inc.'s track record of profits to prove its own

anticipated profits.[4]  On appeal, Independent contends the district court erred because it summarily concluded a new business could not recover lost profits as a matter of law.

Under Missouri law, as a general rule, anticipated profits of a commercial business are too remote and speculative to warrant their recovery.  Coonis v. Rogers, 429 S.W.2d 709, 714 (Mo. 1968) (quoting Morrow v. Missouri Pac. Ry. Co., 123 S.W. 1034, 1038 (1909)).   However, anticipated profits may be recovered when "they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount."  Coonis, 429 S.W.2d at 714; Anderson v. Abernathy, 339 S.W.2d 817, 824 (Mo. 1960).  In order to recover lost profits, plaintiff must produce proof of the business' income and expenses during a reasonable period of time prior to the interruption of the business.  Coonis, 429 S.W.2d at 714; Polytech, Inc. v. Affiliated FM Ins. Co., 21 F.3d 271, 276 (8th Cir. 1994).

This Court has observed that: "[U]nder Missouri law there is no per se rule that a so-called 'new' business may not, regardless of the facts and circumstances, recover for loss of net profits or net gain."  Handi Caddy, Inc. v. American Home Products Corp., 557 F.2d 136, 139 (8th Cir. 1977).  While the general rule requiring proof of expected profits with reasonable certainty places a greater burden upon a newly

---

[4]The district court noted  the affidavit of Independent's president, Robert Hirst, suggested IBF, Inc. had other business interests separate and apart from the manufacturing operations taken over by Independent.  Apparently, the district court believed that Independent was attempting to rely upon the general profits generated by IBF, Inc. as its track record.   We do not agree with this assessment. The Hirst affidavit states that IBF, Inc. "generated a profit *from its manufacturing operations* for several years prior to Independent Business Forms taking over that operation."  (R. 246) (emphasis added).  These profits are limited to the manufacturing aspect of IBF, Inc.'s business.  We fail to see how this statement suggests these profits derived from other business activities of IBF, Inc.

established business, it does not mean a new business can never recover lost profits.[5] Id.

Other courts have allowed a new business to recover lost profits where a predecessor company's profits could be established.[6] In Lee v. Joseph E. Seagram & Sons, Inc., 552 F.2d 447 (2d Cir. 1977), the Second Circuit observed that lost profits may be a proper measure of damages in a breach of contract case even when a prospective business has not yet begun. In Lee, the defendant had promised to give plaintiff a new distiller distributorship in exchange for plaintiff's ownership interest in an existing distributorship. After purchasing the ownership interest, defendant failed to provide plaintiff with the new distributorship. At trial, the plaintiff's expert witness presented evidence of the anticipated future profits of the new distributorship based upon an extrapolation from the last fiscal year of operations of plaintiff's previous distributorship. The Second Circuit refused to find such evidence too speculative to support recovery of lost profits. Lee, 552 F.2d at 456. See also Bell Helicopter Co. v. Bradshaw, 594 S.W.2d 519 (Tex.Civ.App. 1979) (holding plaintiff may recover lost profits even though its business was only four months old because of plaintiff's previous experience and success in similar business endeavor).

While these cases involve different state law, they address the same issue implicated in this case, namely, the general rule that a new business cannot recover lost

---

[5]In Handi Caddy, Inc., this court recognized this principle in the context of a claim for lost profits for a breach of contract. This principle applies equally well in the context of a fraud action.

[6]See McDermott, III v. Middle East Carpet Co., Associated, 811 F.2d 1422 (11th Cir. 1987) (allowing recovery of lost profits by new carpet business, opened after a fire destroyed original carpet business, based on four-year track record of profits of the original carpet business); Vickers v. Wichita State University, Wichita, 518 P.2d 512 (Kan. 1974) (allowing the use of established television and advertising market industry profits to form basis of lost profits estimate for new television contract).

profits should not be applied when the profits of a similar, predecessor company are available to form the basis for an estimate of lost profits. When the appropriate facts and circumstances are present, even a new business may recover lost profits.

In this case, Robert Hirst and Allan Schmidt incorporated Independent for the purpose of taking over the successful manufacturing operations of their original business, IBF, Inc. Between 1986 and 1989, IBF, Inc. manufactured and sold business forms by direct sale in the St. Louis, Missouri area, and in 1989, IBF, Inc. made approximately $1.7 million in sales. (Tl. Tr. at 4-43). Given the success of their business, Hirst and Schmidt decided to expand their business by opening a new manufacturing plant in Union, Missouri. (Tl. Tr. at 2-59, 2-64). IBF, Inc. would continue to conduct direct sales in the St. Louis region, and Independent would manufacture and sell business forms to independent distributors in other parts of the country.[7] Norm Dilg, the CPA for both companies, and Independent's expert witness on damages, testified at trial that Independent's operations were a continuation, or spin-off, of IBF, Inc.'s business. (Tl. Tr. at 3-146).

Considering the close and continuous relationship between Independent and its sister company, IBF, Inc., the district court should have allowed Independent to develop and pursue its lost profits claim using IBF, Inc.'s profits to establish its own earning potential. We are not in a position to determine whether Independent could have developed sufficient evidence to meet the stringent requirements of proving lost profits.[8] Such a question is essentially a problem of proof and must be decided based

_____

[7]The reason for this division, as explained by Allan Schmidt at trial, was that distributors did not want to purchase product from a company that was also a competitor in the direct sales market within the sales region. (Tl. Tr. at 2-56).

[8]These evidentiary factors suggest that IBF, Inc.'s business was different from Independent's projected business: The new plant facility in Union was four times larger than IBF, Inc.'s facility in St. Louis, and employed up to thirty production employees while IBF, Inc. had only seven or eight. (Tl. Tr. at 3-32 to 3-33). IBF, Inc.

upon the evidence developed.  <u>Handi Caddy</u>, 557 F.2d at 139.  For now, we simply hold the dismissal of the claim on summary judgment was premature and should therefore be reversed.

We vacate the judgment entered by the district court in favor of AM-G.  We affirm the district court's conditional grant of a new trial and do so in accord with the principles relating to the evidentiary proofs discussed in this opinion.

IT IS SO ORDERED.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

sold its business forms directly in the St. Louis market; Independent planned to sell its business forms to independent distributors outside the St. Louis area. Even if Independent is justified in using IBF, Inc.'s earning track record, that track record is only three years long at most.  Robert Hirst testified that IBF, Inc. went from zero profits in 1986 to 1.7 million in sales in 1989.  Nevertheless, we believe the jury should be allowed to consider all of the conflicting proofs in determining whether plaintiff may recover lost profits in connection with its fraud claim.