

# Missouri Court of Appeals
## Southern District

### In Division

EARTH TO GO, INC.,               )
                                 )
        Plaintiff-Respondent,    )
                                 )
and BIODEGRADABLE FOOD           )
SERVICE, LLC,                    )
                                 )
        Intervenor Plaintiff,    )
                                 )
v.                               )    No. SD38086
                                 )    Filed:  February 7, 2025
CITY OF RICHLAND,                )
                                 )
        Defendant-Appellant.     )

APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

Honorable Aaron G. Koeppen, Circuit Judge

### AFFIRMED IN PART, VACATED IN PART, AND REMANDED

This appeal only involves the issue of damages caused by a leaking roof on a building owned by the City of Richland (City) and leased by Earth To Go, Inc. (ETG). A jury found in favor of ETG and awarded damages, which included lost profits, in the amount of $560,000.[1]

The City presents two points on appeal, the first of which is dispositive. Point 1 contends the trial court erred in allowing ETG to submit its request for lost profits to the jury

---

[1] The jury initially awarded $620,000, but that amount was later reduced to $560,000 by stipulation of the parties due to a settlement with a third-party defendant.

because ETG failed to prove lost profits with reasonable certainty. We agree. Therefore, we vacate the judgment in favor of ETG, including the award of attorney fees and costs. We remand for a new trial on damages, without consideration of lost profits, on ETG's counterclaim against the City. On remand, we also direct the trial court to enter judgment for the City on the negligence claim of intervenor Biodegradable Food Service, LLC (BFS). The judgment in favor of the City on its ejectment claim against ETG is affirmed.

*Factual and Procedural Background*

In November 2011, ETG began to rent the City's building (Building) pursuant to a lease agreement (Lease) for a five-year term. ETG, which also formed in 2011, is a business engaged in the development and manufacturing of environmentally friendly food service products.

In 2014, the Building's roof began to leak. For various reasons, the City failed to complete the necessary repairs during the initial term of the Lease. In June 2015, ETG halted production of its product due to water issues. In November 2015, ETG stopped paying rent to the City.[2] Despite these issues, ETG sought to renew the Lease beginning a year later in November 2016. The City refused. In December 2016, the City filed the underlying cause of action for ejectment against ETG.[3]

In response, ETG filed a counterclaim against the City for breach of contract, negligence, and tortious interference with business relationships. In August 2018, the trial court granted leave for ETG's "sister company," BFS, to intervene in this action. BFS also

---

[2] Also in November 2015, after failed attempts to repair the roof, the City received an appraisal of the Building stating the cost of roof repairs exceeded the value of the Building.

[3] The parties later agreed to the entry of a consent judgment giving immediate possession of the Building to the City and reserving the issue of the City's damages for resolution by agreement or trial.

filed a claim against the City for negligence. BFS, founded in 2001, is a distributer of biodegradable containers manufactured in China or Taiwan. BFS sold its product primarily in northern California, operating out of a warehouse in that area. BFS was not a party to the City's Lease with ETG. ETG differs from BFS in that ETG is a manufacturer, not a reseller, and was founded to manufacture a different "compostable" product with the brand name EarthWare.[4]

In September 2022, a jury trial was held. Those testifying for ETG included Kevin Duffy (Duffy), president and founder of both ETG and BFS. Insofar as relevant here, Duffy provided the following testimony as to lost profits.

According to Duffy, in May 2015, ETG received an order from Office Depot for EarthWare products totaling $2,142. Office Depot placed two subsequent orders for $178 and $514 for EarthWare products.[5] The total purchase price for the EarthWare orders was less than $3,000. Despite these low sales, Duffy testified that: (1) based on Office Depot's initial order alone, Office Depot's future demand for EarthWare "would sell out the plant"; (2) the sale "sprung enormous potential"; and (3) had Office Depot's orders been fulfilled, Office Depot's business "was estimated at $150 million, so it was very positive." Duffy testified in these general terms about ETG's potential profitability and presented no evidence of production expenses required to calculate ETG's potential net profits.

---

[4] "Compostability" and "biodegradability" are held to different standards. ETG's president admitted that in July 2014 EarthWare failed to meet the standard for certification of compostability and therefore could not be legally marketed as compostable.

[5] Among the orders for EarthWare, Office Depot also placed two orders for BFS products, for $221 and $200.

BFS also provided evidence of its profitability. On its tax return for 2011, BFS reported a net profit of $381,000. In the three years that followed, however, BFS reported net losses of $176,000, $63, and $271,000 for years 2012, 2013, and 2014 respectively.

At the close of ETG's evidence and of all the evidence, the City moved for directed verdict. The City argued, *inter alia*, that ETG failed to make a submissible case for the recovery of lost profits. The trial court denied both motions. The court agreed with ETG's argument that, although ETG was a new business and not profitable, ETG was "very, very similar" to BFS, and therefore, ETG could rely on evidence of BFS's profitability to show lost profits for ETG.[6]

Thereafter, two claims were presented to the jury. ETG submitted its claim for breach of contract, and BFS presented its claim for negligence. During ETG's initial closing argument, ETG's counsel did not specify an amount for requested damages. At the end of ETG's rebuttal closing, however, ETG's counsel specifically asked the jury for lost profits in the amount of "$600,000 for the first year" and potentially multiplied for up to "five years[,]" which would bring the request to a total of $3,000,000 in lost profits.[7]

Following deliberations, the jury found in favor of ETG on its breach-of-contract claim and awarded $620,000 in total damages, including lost profits. The jury did not itemize the total by different types of damages, and it is unclear what amount, if any, constituted lost profits. As noted above, the $620,000 total award was reduced to $560,000 by stipulation of the parties due to a prior settlement with a third-party defendant. With

---

[6] Agreeing with this argument, the trial court explained that "these two … companies in large part are intricately combined, connected and similar in a number of ways, including owners, operators, employees, doing business, invoicing, letters, communications with the City, negotiations with the City."

[7] Counsel for ETG also asked the jury for specific amounts of other types of damages related to damaged equipment, damaged product, and employee retention.

respect to BFS's negligence claim, the jury found in favor of BFS but awarded zero damages. After briefing and argument on a request for attorney fees, the court awarded fees and costs of $249,904.35, for a total judgment of $809,904.35 in favor of ETG.[8]  An appeal by the City followed.

*Scope of Appeal*

The only judgment being appealed is the one entered in favor of ETG and against the City.  No party has appealed the resolution of the City's ejectment claim, so it is affirmed. No party has appealed the resolution of BFS's negligence claim against the City, so it is affirmed.  The language of the judgment concerning this claim, however, requires correction. The judgment recited that the jury awarded zero damages to BFS, but the court did not enter judgment in favor of BFS or the City.  That is incorrect.  "In negligence cases where unliquidated damages are an element of the cause of action, a verdict finding for the plaintiff but awarding no damages is treated as a verdict for the defendant."  ***China Worldbest Grp. Co., Ltd. v. Empire Bank***, 373 S.W.3d 9, 16 (Mo. App. 2012); *see also* ***Campbell v. Kelley***, 719 S.W.2d 769, 771 (Mo. banc 1986); ***Morelock v. Highland Springs Cmty. Ass'n, Inc.***, 679 S.W.3d 115, 119 n.4 (Mo. App. 2023).  Therefore, on remand the trial court is directed to enter judgment in favor of City on BFS's negligence claim.  With those details clarified, we turn to the merits of the issue raised in this appeal.

*Standard of Review*

On appeal, the City contends the trial court erred by overruling its motion for a directed verdict at the close of all the evidence on ETG's request for lost profits.  Our review of the trial court's decision to sustain or overrule a motion for directed verdict depends on

---

[8]  Thereafter, the City filed a motion for new trial that included its claim of error regarding lost profits.  The trial court denied the motion.

whether the party with the burden of proof made a submissible case, which we review *de novo*. *Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 459 (Mo. banc 2017). "A case may not be submitted unless each and every fact essential to liability is predicated on legal and substantial evidence[,]" and a motion for directed verdict should be granted if the moving party "shows that at least one element" of the case "is not supported by the evidence." *Ellison v. Fry*, 437 S.W.3d 762, 768 (Mo. banc 2014) (internal citations omitted). We review the evidence and all reasonable inferences in a light most favorable to the party with the burden of proof, while disregarding all contrary evidence and inferences. *Johnson*, 523 S.W.3d at 460. "The evidence and inferences must establish every element and not leave any issue to speculation." *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 339 (Mo. App. 2000).

*Discussion and Decision*

The City's first point argues that the trial court should not have permitted ETG to request an award of lost profits because ETG failed to prove that element of damages with "reasonable certainty." According to the City: (1) ETG's "case for lost profits rested solely upon a future hypothetical increase in demand for its product and sales from a related but unidentical business's profits"; and (2) ETG "submitted evidence only of gross profits instead of net profits, all of which are insufficient to make a submissible case." We agree with these arguments.

"Loss of profits refers to the amount of net profits a plaintiff would have realized if its clients had not been lost as a result of a defendant's actions." *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. banc 2005) (citation omitted). "The general rule as to the recovery of anticipated profits of a commercial business is that they are too remote, speculative, and too dependent upon changing circumstances to warrant

6

a judgment for their recovery." ***Coonis v. Rogers***, 429 S.W.2d 709, 714 (Mo. 1968). Therefore, when "evaluating the sufficiency of evidence to sustain awards of damages for loss of business profits[,] the appellate courts of this state have made stringent requirements, refusing to permit speculation as to probable or expected profits, and requiring a substantial basis for such awards." ***Id***. at 713-14; *see **Ameristar***, 155 S.W.3d at 54.

A party claiming damages bears the burden of proving the existence and amount of damages with "reasonable certainty." ***Ameristar***, 155 S.W.3d at 54. "[A] plaintiff must provide evidence of the income and expenses of the business for a reasonable time before the interruption caused by [a] defendant's actions, with a consequent establishing of the net profits during the previous period." ***Wandersee v. BP Products North America, Inc.***, 263 S.W.3d 623, 633 (Mo. banc 2008); *see also **Thoroughbred Ford, Inc. v. Ford Motor Co.***, 908 S.W.2d 719, 735 (Mo. App. 1995). Further, although new businesses are not required to present historical data to recover lost profits, new businesses operate under a "greater burden of proof" in overcoming the general rule that evidence of expected profits is too speculative, uncertain, and remote to be considered. ***Midwest Coal, LLC ex rel. Stanton v. Cabanas***, 378 S.W.3d 367, 373 (Mo. App. 2012); *see also **Tipton v. Mill Creek Gravel Inc.***, 373 F.3d 913, 918 (8th Cir. 2004) (applying Missouri law). Lost profits may, nevertheless, be recovered only when "they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount[.]" ***Coonis***, 429 S.W.2d at 714; *see, e.g.*, ***Tipton***, 373 F.3d at 921 (holding that "in light of the difficult standard for proving lost profits under Missouri law, the evidence was insufficient for a reasonable jury to find that Mill Creek – a corporation that was $700,000 in debt, had sold almost none of its product, and had a product that many purchasers were not interested in buying – was 'reasonably certain' to make a profit").

7

Here, the evidence presented was insufficient to prove the amount of ETG's lost profits with reasonable certainty. The only evidence ETG presented at trial in support of its request for up to $3,000,000 in lost profits consisted of three orders from Office Depot for EarthWare products at a total of less than $3,000. This evidence was followed by Duffy's speculation that these orders had "enormous potential" that "could possibly sell out the plant" and generate business "estimated at $150 million[.]" These speculations are exactly the kind of conjectural assumptions that are "disfavored by all Missouri courts that have addressed the issue of lost profits." *Tipton*, 373 F.3d at 919; *see Ameristar*, 155 S.W.3d at 54 (applying "stringent requirements, refusing to permit speculation as to probable or expected profits"); *Coonis*, 429 S.W.2d at 713-14 (same holding). Further, ETG never made a *net* profit from which future profits could be projected. *See Wandersee*, 263 S.W.3d at 633 (requiring evidence of income and expenses to establish net profits). Thus, ETG failed to produce evidence that made ETG's lost profits "reasonably certain by proof of actual facts, with present data for a rational estimate of their amount[.]" *Coonis*, 429 S.W.2d at 714; *Midwest Coal*, 378 S.W.3d at 373 (applying same standard of recoverability to lost profits from a new business).

On appeal, ETG makes no attempt to argue that its claim for lost profits could be supported by its own history of profits. Instead, ETG argues that it could prove a right to recover lost profits using the historical profits of BFS because of the close relationship between the two companies. In support of this argument, ETG relies solely on *Indep. Bus. Forms, Inc. v. A-M Graphics, Inc.*, 127 F.3d 698 (8th Cir. 1997). In *Indep. Bus. Forms*, the Eighth Circuit United States Court of Appeals applied Missouri law in a case that involved claims of fraud arising from the sale of printing presses between two businesses. The court ruled that the trial court should have permitted the plaintiff, a new business, to

present a claim for lost profits based on the profits of another predecessor company, because the plaintiff was a "continuation, or spin-off" of the same predecessor business. *Id*. at 704. The Eighth Circuit applied Missouri law only to the extent that while "reasonable certainty places a greater burden upon a newly established business, it does not mean a new business can never recover lost profits." *Id*. at 703. The Eighth Circuit then applied law from the Second Circuit, however, and held that "the general rule that a new business cannot recover lost profits should not be applied when the profits of a similar, predecessor company are available to form the basis for an estimate of lost profits." *Id*. at 703-04.

We disagree with ETG's assertion that *Indep. Bus. Forms* should be controlling in the present case. Federal court decisions are not binding on this Court, *J.A.L. v. Lambert*, 682 S.W.3d 424, 429 (Mo. App. 2024), and there are several compelling reasons for us to disregard *Indep. Bus. Forms* as even a persuasive authority. The Eighth Circuit's discussion of basing lost profits on the profits of a predecessor company cites no Missouri authorities, instead relying on cases from other federal circuits and the state of Kansas. *Indep. Bus. Forms*, 127 F.3d at 703-04, n.6. We are unaware of any decisions from Missouri courts since *Indep. Bus. Forms* that have applied the analysis of a spin-off business in evaluating the recovery of lost profits. Additionally, the spin-off standard applied by the Eighth Circuit appears to be inconsistent with well-established Missouri law regarding the recovery of lost profits. A plaintiff seeking damages for lost profits "must provide evidence of the income and expenses of the business for a reasonable time before the interruption caused by [a] defendant's actions." *Wandersee*, 263 S.W.3d at 633. This rule makes no mention of evidence of the income and expenses of a "related" or "similar" business. Calculating lost profits based on the profits of a related or similar business also is inherently speculative, because the jury must use conjecture as to how predictive the success of one business is to

9

the success of another. In calculating lost profits, "stringent requirements" in Missouri direct our courts to refuse to permit this sort of speculation. *Ameristar*, 155 S.W.3d at 54; *Coonis*, 429 S.W.2d at 713-14.

Further, even if we were to accept the proposition from *Indep. Bus. Forms* that a "continuation" or "spin-off" company can establish lost profits through the profits of its predecessor company, ETG's award of lost profits could not be affirmed because ETG has not established a sufficiently close connection to BFS. ETG is not a continuation of BFS or a spin-off of the same business. The businesses are fundamentally different, in that BFS is a reseller of its product line and ETG is a manufacturer of a different product line. According to Duffy, ETG was founded to manufacture EarthWare, a compostable product distinct from products sold by BFS. In this case, it was ETG's burden to present evidence of lost profits for EarthWare. *See Midwest Coal*, 378 S.W.3d at 373. Furthermore, as a newly established business, ETG was under an even greater burden in overcoming the general rule that evidence of expected profits is too speculative, uncertain, and remote to be considered. *Id*. For the reasons set out above, ETG failed to meet that burden.

Thus, we agree with the City that ETG failed to prove both the existence and amount of damages for lost profits with any "reasonable certainty." *Ameristar*, 155 S.W.3d at 54. As such, the trial court erred in allowing ETG to include a request for lost profits as an element of damages for the jury to consider. Accordingly, the City's first point is granted.[9]

Because the jury did not identify or distinguish the other breach-of-contract damages from the lost-profit damages in its award to ETG, we are required to vacate that damages

---

[9] The City's second point also challenges the damage award for lost profits. This point contends the trial court erred in overruling the City's objection to ETG's rebuttal closing argument when, for the first time, ETG requested a specific amount of total damages, thereby raising a presumption of prejudice that ETG failed to overcome. Because this claim of error is not likely to recur on remand, we do not reach it.

determination in the judgment, as well as the related award of attorney fees and costs, and remand the case for a new trial on damages. *See **Tipton***, 373 F.3d at 921.

*Conclusion*

The judgment in favor of the City on its ejectment claim against ETG is affirmed. The judgment in favor of ETG on its breach-of-contract claim against the City is vacated and remanded for a new trial on damages only. On remand, ETG's damages should be determined by the jury without any consideration of lost profits. ***Id***. The trial court is also directed to enter judgment in the City's favor on BFS's negligence claim.

JEFFREY W. BATES, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

BECKY J. WEST, J. – CONCUR