**Dennis R. PETTY, Appellee,**

v.

**TENNKEN RAILROAD, INC., Appellant.**

Supreme Court of Tennessee, at Jackson.

Dec. 22, 1986.

Ralph I. Lawson, Lawson & Lannom, P.A., Dyersburg, for appellee.

Holt Shoaf, Milan, for appellant.

OPINION

FONES, Justice.

Plaintiff, an employee of a common carrier by railroad engaged in interstate commerce, brought this workers' compensation action to recover for an injury sustained while he was in the scope of his employment but was not engaged in an activity directly affecting interstate commerce. The determinative question of whether plaintiff was covered by the Federal Employers' Liability Act [FELA] at the time of the injury or by the Tennessee Workers' Compensation Act depends upon whether any part of his duties as a railroad employee directly or closely and substantially affect interstate commerce.

The trial court awarded plaintiff workers' compensation benefits without finding any facts or addressing the legal issue. We find a sufficient part of plaintiff's usual duties were in furtherance of interstate commerce to bring him within the coverage of the FELA.

Plaintiff was employed by defendant railroad in July of 1984. He described his position as "an agent in training ... doing the payroll, handling the paperwork, the day-to-day business of the trains, their schedules, routing, where they went; just

clerical type duties. I did some accounts receivable, accounts payable, just local."

His immediate supervisor was Polly Bullock. Ms. Bullock testified that plaintiff was hired as a freight agent trainee and that he was training under her. She had formerly held that job but had been promoted to customer service agent. She said that plaintiff's description of the duties of a freight agent was "pretty much" accurate but added that the freight agent is in charge of all the switching that both of the crews would perform each day and that the freight agent acts as dispatcher and takes all information from customers about where they want cars placed and outbound billings. She testified that, if the job of the freight agent does not get done, the trains do not run. It is undisputed that defendant railroad operates between Dyersburg, Tennessee, and Hickman, Kentucky, and is engaged in interstate commerce.

There was evidence that the owners of defendant railroad had purchased another railroad that would apparently operate only from Trenton, Tennessee, to a point near Jackson, Tennessee, and would thus be limited to intrastate activity. This railroad was or would be a separate corporation from defendant known as West Tennessee Railroad, and plaintiff would become the freight agent for that railroad. The only further material fact revealed in the record about the status of the intrastate railroad as of the date of the accident was that it "didn't have the bookkeeping system set up yet."

Plaintiff testified that he was instructed by Leroy Kennedy, the general manager of defendant railroad, to report to the depot of the West Tennessee Railroad at Trenton, Tennessee, early on the morning of 4 September 1984 and to take with him a load of manuals. While unloading the manuals at the Trenton depot about 4:30 a.m., plaintiff felt a sharp pain in his lower back. He reported the incident to his superiors, went to the hospital and was unable to work for several days. His condition was diagnosed as a herniated disc at the L-4—5 level. His doctor testified that he had a perma-

nent partial disability to the body as a whole of ten percent. The trial judge awarded him five percent disability.

Plaintiff does not contend that he was an employee of the West Tennessee Railroad at the time of the accident but insists that 1) his duties as an employee of defendant Tennken were clerical and had no relation to interstate commerce and 2) that at the time of the injury neither he nor his employer Tennken was engaged in interstate commerce and that he was therefore covered by the Tennessee Workers' Compensation Act. If this injury had occurred prior to 1 August 1939, we would agree with plaintiff.

On 11 August 1939, the Federal Employers' Liability Act was amended; and in 1941 and 1943 the Tennessee Workers' Compensation Act was amended. Prior to 1941 the Tennessee Act exempted all common carriers engaged in interstate commerce. The 1941 amendment had the effect of providing workers' compensation coverage to employees of common carriers engaged purely in intrastate commerce. The effect of the 1943 amendment, which governs this case, was to exempt from the Tennessee Workers' Compensation Act those employees of common carriers who are covered by a liability statute enacted by the Congress of the United States, such as the FELA. Thus it follows that an employee of a railroad engaged in interstate commerce would not be covered by the Tennessee Workers' Compensation Act if the federal courts' interpretation of the FELA would bring the employee within the coverage of that Act.

The coverage language of the FELA, as originally enacted, was "every common carrier by railroad while engaging in commerce between any of the several states...." Ch. 149, 35 Stat. 65 (1908). The United States Supreme Court interpreted that language to mean that both the employee and the railroad had to be engaged in interstate commerce *at the moment of the injury* to come within the coverage of the Act. *Shanks v. Delaware, Lackawanna, & Western Railroad*, 239

U.S. 556, 36 S.Ct. 188, 60 L.Ed. 436 (1916). Later, that Court held that employees engaged in or connected with new construction for their railroad employers were not engaged in interstate commerce. *Raymond v. Chicago, Milwaukee, & St. Paul Railway*, 243 U.S. 43, 37 S.Ct. 268, 61 L.Ed. 583 (1917); *New York Central Railroad v. White*, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917).

The "moment of injury" and the "new construction doctrines" and the frequent cases involving switchmen and other railroad employees who worked both interstate and intrastate shipments each day were the source of confusion to the railroads, their employees and the courts and prompted Congress to amend the Act in 1939. *See Southern Pacific v. Gileo*, 351 U.S. 493, 76 S.Ct. 952, 100 L.Ed. 1357 (1956); and *Reed v. Pennsylvania Railroad*, 351 U.S. 502, 76 S.Ct. 958, 100 L.Ed. 1366 (1956); and Annot., 10 A.L.R.2d 1279 (1950). The 1939 amendment added a paragraph to Section One of the FELA, which reads, in material part, as follows:

> Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Act
> . . . .

Act of Aug. 11, 1939, ch. 685, § 1, 53 Stat. 1404 (codified at 45 U.S.C. § 51 [1982]).

*Reed v. Pennsylvania Railroad, supra*, is the landmark case interpreting the affect of the 1939 amendment on the coverage of the FELA. Ms. Reed was a clerical employee of the Pennsylvania Railroad. Her duties consisted of filing original tracings of the railroad's engines, cars, parts, tracks, bridges, and other structures from which blueprints were made. When an order for blueprints came in from anywhere in the railroad system it was her responsibility to seek out the correct tracing, take it to the blueprint maker and return the original tracings to the file. The files which she attended were the sole depository of the original tracings of the structural details of all of the railroad's rolling stock, trackage, equipment and installations and the Court concluded that those documents were essential to the maintenance of the railroad. Ms. Reed was injured when a cracked windowpane in her office blew in upon her.

The United States Supreme Court held that Ms. Reed was covered by the FELA. The Court's analysis of, and comments about, the effect of the 1939 amendment upon the coverage of the Act follow:

> The 1939 amendment was designed to obliterate fine distinctions as to coverage between employees who, for the purpose of this remedial legislation, should be treated alike. There is no meaningful distinction, in terms of whether the employee's duties are clerical or not, between petitioner and, for illustration, an assistant chief timekeeper, *Straub v. Reading Co.*, 3 Cir. [1955], 220 F.2d 177, or a messenger boy carrying waybills and grain orders between separate local offices and freight stations, *Bowers v. Wabash R. Co.*, Mo.App. [1952], 246 S.W.2d 535, or a lumber inspector hurt while inspecting ties at a lumber company, *Ericksen v. Southern Pacific Co.*, [1952] 39 Cal.2d 374, 246 P.2d 642—all of whom have been held covered by the 1939 amendment.... The benefits of the Act are not limited to those who have cinders in their hair, soot on their faces, or callouses on their hands....
>
> ... It evinces a purpose to expand coverage substantially as well as to avoid narrow distinctions in deciding questions of coverage. Under the amendment, it is the "duties" of the employee that must further or affect commerce, and it is enough if "any part" of those duties has the requisite effect....
>
> . . . .
>
> "The word 'furtherance' is a comprehensive term. Its periphery may be vague, but admittedly it is both large and elastic." *Shelton v. Thomson*, 7 Cir. [1945],

148 F.2d 1, 3. Petitioner's duties here come within the confines of that concept. 351 U.S. at 505–507; 76 S.Ct. at 961–962.

It is our opinion that plaintiff's duties as an employee of Tennken had a direct, close and substantial effect upon whether or not the railroad's trains operated and were more directly connected to the furtherance of interstate commerce than those of Ms. Reed.

Plaintiff relies upon cases involving injuries sustained prior to the 1939 amendment of the FELA. What the employee was doing at the moment of injury was rendered irrelevant by that amendment. That test has been replaced by examination of the *duties* of the employee and "it is enough if 'any part' of those duties has the requisite effect," to-wit: directly or closely and substantially affect the furtherance of interstate commerce. There was no factual dispute between plaintiff's and Ms. Bullock's testimony with respect to the duties of a freight agent. Clearly, the person who provides the link between the shipper and the train crew, directs switching and placing of cars and dispatches trains operating in interstate commerce, performs duties that are in furtherance of and directly affect interstate commerce.

We have found only two Tennessee cases that have discussed, in any context, the coverage of the FELA since the 1939 amendment. Neither of these was cited by the parties in this case.

In *Louisville & N.R. Co. v. Potts*, 178 Tenn. 425, 158 S.W.2d 729 (1942), the deceased employee's widow and children brought a workers' compensation action. The deceased employee was a fireman on a switch engine, and on the day of the accident the crew was engaged in switching cars that were moving in both interstate and intrastate commerce. The accident happened on November 7, 1940. Although this Court found that at the time of the accident the deceased employee and the crew were handling cars in an intrastate movement, his duties as fireman on the switch engine were in furtherance of interstate commerce. The Court noted that prior to the 1939 amendment it was immaterial what character of work the employee was engaged in at times other than when the injury occurred in determining whether he or she was, at the time of injury, engaged in interstate commerce but that the 1939 amendment evinced a legislative intent to extend the Act to all railroad employees whose duties pertained to the furtherance of interstate commerce without regard to what the employee was doing at the moment of injury. 158 S.W.2d at 730, 731.

*Atlantic Coast Line R.R. v. Meeks*, 30 Tenn.App. 520, 208 S.W.2d 355 (1947), was originally brought as a workers' compensation suit. In its answer defendant alleged that Meeks was a section hand whose duties working on the tracks were in furtherance of interstate commerce and therefore he was not covered by the Tennessee Workers' Compensation Act. Meeks then filed suit asserting coverage under the FELA. The two suits were tried together. The FELA suit was tried to a jury and the workers' compensation action was tried by the trial judge, and the jury was unaware of the existence of the compensation suit. The jury returned a verdict of $15,000 in favor of plaintiff, which was approved by the trial judge and affirmed by the Court of Appeals. This Court denied certiorari.

The injury occurred after working hours at the shanty or bunk car provided by the railroad for the section gang to sleep in during the work week. The Court of Appeals discussed the 1939 amendment to the FELA and the cases interpreting it at great length and recognized that, even though Meeks was not engaged in interstate commerce at the moment of injury, the amendment required focusing upon the duties performed by the employee at other times. The intermediate court found Meeks' work on the tracks to be in furtherance of interstate commerce and affirmed the trial court's award under the FELA.

Our holding herein is clearly consistent with *Potts* and *Meeks*.

The decree of the trial court is reversed and plaintiff's workers' compensation suit is dismissed. Costs are adjudged against plaintiff.

BROCK, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.