MIDWEST COAL, LLC, By and Through its Bankruptcy Trustee Janice STANTON, Appellant,

v.

Tom CABANAS, Respondent.

No. ED 97479.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 28, 2012.

Mark T. Kempton, Sedalia, MO, for appellant.

Joel A. Poole, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Presiding Judge.

### Introduction

Midwest Coal (Plaintiff) appeals the trial court's grant of summary judgment to Tom Cabanas (Defendant) on its claim for fraudulent misrepresentation. Plaintiff claims the trial court erred in granting summary judgment to Defendant because: (1) Plaintiff was not required to show a history of profitability in order to recover lost profits; and (2) genuine issues of material fact exist as to whether Plaintiff suffered lost profits. Plaintiff also contends that the trial court erred in denying its motion for partial summary judgment. We affirm.

### Factual and Procedural Background

Plaintiff, a coal mining operator, formed in 1997 and began mining at its Tiger Mine in the Spring of 1998. During its years of operation, Plaintiff never generated a profit.

Plaintiff sold its coal pursuant to contracts with several customers, the largest of which was the City of Independence.[1] Due to problems with the quality of Plaintiff's coal, Independence assessed quality penalties against Plaintiff and demanded Plaintiff wash the coal prior to delivery. As a result of these penalties and unforeseen operating costs, in September 2001, Plaintiff had a total negative equity of $2,976,000.

By the Spring of 2000, Plaintiff was not able to produce enough coal from its Tiger Mine operations to satisfy its customers' demands. Seeking other sources of coal, Plaintiff negotiated with Alternate Fuels, Inc. (AFI), another coal mining operator, to extract coal slurry[2] from AFI's waste

---

1. Pursuant to its contract with Plaintiff, Independence had the ability to purchase up to 50 or 60 percent of Plaintiff's production capacity. Plaintiff's other customers included La-Farge, Trigen, and the Cities of Chillicothe and Marshall.

2. Coal slurry is a waste fluid produced by washing coal with water and chemicals prior to shipping the coal to market. While Defendant refers to this substance as "slurry," Plaintiff employs the word "fines." We will use "slurry," as this term more accurately

pond at the Blue Mound Mine. Plaintiff intended to blend AFI's slurry with Plaintiff's Tiger Mine coal and sell the blended coal to its current customers. In April 2000, Plaintiff obtained an exploratory permit from the Missouri Department of Natural Resources (DNR) and extracted up to 2,500 tons of slurry from AFI's waste pond for the price of $7.50 per ton. Plaintiff expected to eventually contract for the purchase of all 741,837 tons of AFI's slurry at the same price.

At the time that Plaintiff and AFI were negotiating the sale of the slurry, Defendant was section chief of the DNR's Land Reclamation Commission, which was responsible for issuing mining permits and overseeing compliance with surface coal-mining laws. During a telephone conversation in April 2000, Defendant informed Michael King, Plaintiff's president, that the purchase of AFI's slurry would require a DNR permit change. Although Defendant was not involved in and had no authority over the DNR's permitting decisions, he allegedly warned King that "as long as I'm here, that [permit change] won't happen." As a result of Defendant's statement to King, Plaintiff decided not to proceed with the purchase of AFI's slurry.

Subsequently, AFI and its president, Larry Pommier, sued Defendant in U.S. District Court for the Western District of Missouri, alleging denial of equal protection, tortious interference with contract, and violation of the First Amendment. The district court granted Defendant summary judgment on all but the tortious interference claim, which was tried before a jury. During the three-day trial, AFI presented substantial evidence of Defendant's personal dislike for AFI and Pommier. After the trial, the jury returned a verdict in AFI's favor, finding Defendant liable for intentional interference with a

prospective economic advantage, and awarded AFI $5,563,778 in actual damages and $900,000 in punitive damages. The U.S. Court of Appeals for the Eighth Circuit affirmed. *Alternate Fuels, Inc. v. Cabanas*, 538 F.3d 969 (8th Cir.2008).

Thereafter, Plaintiff filed the instant cause of action against Defendant alleging that Defendant's fraudulent misrepresentation induced Plaintiff to cease negotiations with AFI and forego the purchase of AFI's slurry. Plaintiff further claimed that, as a result of Defendant's statement and Plaintiff's consequent decision not to purchase the slurry, Plaintiff lost the profits it would have earned from purchasing the slurry, blending the slurry with Plaintiff's Tiger Mine coal, and selling the blended coal. Plaintiff sought to recover approximately $18 million in lost anticipated profits it claimed it would have earned from the sale of blended coal.

Plaintiff filed a motion for partial summary judgment claiming that "the uncontroverted facts necessarily determined by the jury in [*Alternate Fuels v. Cabanas*] establish the liability elements of Plaintiff's cause of action for fraudulent misrepresentation...." The trial court denied Plaintiff's motion for partial summary judgment on December 9, 2010.

Defendant filed a motion for summary judgment claiming he was entitled to summary judgment because Plaintiff could not prove damages. Specifically, Defendant argued that Plaintiff's claim for lost profits "fails as a matter of law because [Plaintiff] has no history of profitability, cannot meet the heightened standard required of a new business, and cannot overcome the inherently speculative requirements necessary to obtain the slurry."

describes the substance that Plaintiff contemplated removing from AFI's waste pond.

The trial court granted Defendant's motion for summary judgment. The trial court concluded that Plaintiff "failed to produce evidence sufficient to allow the trier of fact to find that Plaintiff suffered lost, or anticipated, profits." More specifically, the trial court held that Plaintiff failed to show that it had, or would have had, buyers for the blended coal: "[P]laintiff has produced no evidence that it ever actually sold slurry to a buyer at a profit, or that it ever had any agreements, contracts, deals or purchase orders, or anything else, which would allow the issue of lost profits to be submitted to the trier of fact." Plaintiff appeals.

### Standard of Review

Appellate review of summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When reviewing a trial court's grant of summary judgment, this court views the record in the light most favorable to the party against whom summary judgment was entered. *Id.* This court will uphold summary judgment only if we find that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.;* Rule 74.04(c). An issue of material fact is genuine "only if it is real and substantial; it may not consist 'of conjecture, theory and possibilities.'" *Hanson v. Union Elec. Co.*, 963 S.W.2d 2, 4 (Mo.App. E.D.1998) (*quoting ITT,* 854 S.W.2d at 378).

### Discussion

■ In its first point on appeal, Plaintiff claims the trial court misapplied the law in finding that to prevail on its claim for lost anticipated profits, Plaintiff was required "to show a history of profitability from its business as a whole." Plaintiff maintains that past profitability is not relevant to the instant case where Plaintiff is seeking to recover lost profits from "the specific and limited transaction of buying and selling AFI's coal fines." Defendant counters that Plaintiff's proposed "specific transaction" standard is not applicable because: (1) there was no "specific transaction" or contract for sale which gave rise to actual damages; and (2) Plaintiff's proposed coal blend is not a fixed commodity.

■ The Supreme Court of Missouri has held that: "The general rule as to the recovery of anticipated profits of a commercial business is that they are too remote, speculative, and too dependent upon changing circumstances to warrant a judgment for their recovery." *Coonis v. Rogers*, 429 S.W.2d 709, 714 (Mo.1968). Anticipated profits may be recovered "only when they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount...." *Id.* "It is indispensable that this proof include the income and expenses of the business for a reasonable anterior period, with a consequent establishing of the net profits during the previous period." *Thoroughbred Ford, Inc. v. Ford Motor Co.*, 908 S.W.2d 719, 735 (Mo.App. E.D.1995); *see also Coonis,* 429 S.W.2d at 714.

Plaintiff failed to present proof of its income and expenses for a reasonable time anterior to Defendant's alleged fraudulent misrepresentation. Indeed, the record on appeal shows that Plaintiff's business never generated a profit. With no history of profitability, Plaintiff cannot present sufficient evidence to prove lost profits from an existing commercial business.[3] *See, e.g.,*

---

3. Although Plaintiff does not argue that the standard for new businesses should apply, we note that, while new businesses are not required to establish a history of profitability to recover lost profits, they "labor under a greater burden of proof in overcoming the general

*Gesellschaft Fur Geratebau v. GFG Am. Gas Detection, Ltd.*, 967 S.W.2d 144, 148 (Mo.App. E.D.1998); *Brown v. McIBS, Inc.*, 722 S.W.2d 337, 341 (Mo.App. E.D. 1986).

■ In an effort to circumvent the past profitability requirement, Plaintiff argues that such proof is only necessary where a business claims that another's tortious actions caused "the destruction of, or a complete interruption to" its business as a whole. *See BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 195 (Mo.App. E.D.2007). Plaintiff maintains that, because it seeks lost profits from the specific transaction of buying and selling AFI's slurry, it is not required to demonstrate the profitability of its entire business. Accordingly, Plaintiff contends that the more appropriate standard for analyzing its claim is that which is used in "cases involving lost profits stemming from a breach of contract or flowing from and directly traceable to a defendant's wrongful act." To recover lost profits stemming from a breach of contract, a plaintiff need only prove the fact of damages with reasonable certainty and provide an adequate basis for the jury to estimate the lost profits with reasonable certainty. *Ameristar Jet Charter, Inc. v. Dodson International Parts, Inc.*, 155 S.W.3d 50, 54–55 (Mo. banc 2005).

In support of this argument, Plaintiff relies on three cases in which a plaintiff recovered its lost profits on a specific contract or transaction. *BMK Corp.*, 226 S.W.3d 179; *Harvey v. Timber Resources, Inc.*, 37 S.W.3d 814 (Mo.App. E.D.2001); and *Hanes v. Twin Gable Farm, Inc.*, 714 S.W.2d 667 (Mo.App. W.D.1986). In each case, the plaintiff recovered its loss of profits flowing directly from a breach of or interference with a specific contract. In these cases, the courts did not require evidence of income and expenses for a reasonable anterior period because: (1) the evidence clearly established the fact of damages; and (2) the amount of damages was readily ascertainable since these cases involved products for which profits were calculable based on past and future sales of the same items. *BMK Corp.*, 226 S.W.3d at 195–96; *Harvey*, 37 S.W.3d at 818; *Hanes*, 714 S.W.2d at 669–70.

In *Harvey*, the plaintiff contracted to buy and remove all of the defendant's merchantable timber from the defendant's property "at the rate of $55.00 per thousand board feet" within a two-year period. *Harvey*, 37 S.W.3d at 816. After removing a portion of defendant's timber, the plaintiff and his crew left the site, and the defendant told the plaintiff he could not return to finish removing the timber. *Id.* at 817. The plaintiff sued the defendant for breach of contract, and a jury found in favor of the plaintiff. *Id.* Relying on *Coonis*, the defendant argued on appeal that the trial court erred in allowing the plaintiff's expert, a CPA, to testify to the plaintiff's lost profits "because he failed to establish [the plaintiff's] net profits or his fixed and actual expenses for a reasonable anterior period." *Id.* at 817–18. The court held that the *Coonis* standard applies in cases concerning an injury to a business because, "[i]n these types of cases it is reasonable to require the plaintiff to prove past profits to show how the defendant's injury to the business affected its profits." *Id.* at 818. "However, this same reasoning is inapplicable to the situation where a party seeks recovery for loss of profits directly flowing from a breach of contract, where the damages are readily ascertainable." *Id.* The court concluded

rule that evidence of expected profits is too speculative, uncertain, and remote to be considered...." *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 918 (8th Cir.2004) (applying Missouri law) (quotation omitted).

that the plaintiff provided sufficient evidence of probable net profits that the plaintiff would have earned from the contract and affirmed the verdict in favor of the plaintiff. *Id.* at 819.

In *BMK Corp.*, the parties entered a four-year contract pursuant to which the defendant agreed to supply mine foam products and accessories to the plaintiff for distribution. *BMK*, 226 S.W.3d at 185. The defendant later notified the plaintiff of its intent to terminate the contract and began selling its products to the plaintiff's distributors and customers at a price lower than that quoted by the plaintiff. *Id.* at 187. The plaintiff filed suit against the defendant, and a jury found in favor of the plaintiff on its claims of breach of contract, tortious interference with a business expectancy, and intentional misrepresentation. *Id.* On appeal, the defendant argued that, under *Coonis,* the plaintiff's lost-profit evidence lacked sufficient certainty to warrant a judgment in its favor. *Id.* at 195. Following *Harvey,* this court held that "the *Coonis* standard of proof only applies in cases where the loss of expected profits flows from destruction of or injury to a business." *Id.* "When a plaintiff sues for damages arising directly out of a breach of contract, he or she need not prove past profits or expenses." *Id.* In this case the plaintiff proved that it had an exclusive four-year contract with the defendant, the defendant breached the contract, and the plaintiff lost four years' profits arising out of the contract. *Id.* at 196. Because the plaintiff proved the fact of damages with reasonable certainty and provided the jury a rational basis for determining the amount of the plaintiff's damages, the trial court did not err in submitting the plaintiff's lost profits claims to the jury. *Id.* at 196.

In *Hanes,* the plaintiff, a long-time cattle farmer, sued the defendant for fraudulent misrepresentation in the sale of a bull that, contrary to the defendant's statements at the time of the sale, was sterile. 714 S.W.2d at 668. At trial, the plaintiff presented evidence that, as a result of the bull's sterility, thirty-seven of the plaintiff's cows did not become pregnant during the 1976 breeding season, and the plaintiff consequently lost that "calf crop" and the profits therefrom. *Id.* at 669. In regard to damages, the plaintiff testified to the price and weight of calves at weaning time and the market price in 1977–1978, the time at which the calves would have been sold. *Id.* The court held that the plaintiff clearly suffered damages as a result of Defendant's misrepresentation and plaintiff's lost profits were "established by plaintiff so that a trier of fact could ascertain the damages with reasonable certainty, without speculation or conjecture." *Id.* Because Plaintiff's loss was "directly traceable and flowed from defendant's wrongful act in selling the sterile bull," it was not necessary for the plaintiff "to show his entire farming income and expenses." *Id.* at 670.

Unlike the plaintiffs in *BMK Corp., Harvey,* and *Hanes,* whose claims for lost profits involved known commodities with demonstrable market prices, Plaintiff cannot clearly establish the fact of damages or estimate the amount of damages with reasonable certainty. In his deposition, King conceded that "[n]o one in Kansas or Missouri" has successfully recovered slurry, mixed it with coal, and sold it. Although Plaintiff alleges that its current customers would have paid the same price for the blended coal as they paid for the unmixed Tiger Mine coal, Plaintiff presents no evidence beyond speculation in support of this claim. Specifically, Plaintiff failed to identify any customers willing to purchase the blended coal, much less evidence that its customers would have purchased the blended coal at the same price at which

they were buying the unmixed coal. Nor are Plaintiff's lost profits projections, computed by economist John Ward, persuasive evidence of the blended coal's market value, as Ward acknowledged that he performed those projections "relying upon the accuracy of the [Plaintiff's] statements that such a market existed" and "on the statement that the quality of the coal taken out was sufficient to be blended to meet the needs of the client...."

■ In light of the nature of Plaintiff's proposed blended coal product and the complete absence of evidence of any contracts or market for Plaintiff's product, the trial court did not err in declining to apply the "specific transaction" standard to Plaintiff's claim for lost profits. We conclude that the trial court properly analyzed this case pursuant to the "established business" standard set forth in *Coonis* and granted Defendant summary judgment on the grounds that Plaintiff was unable to establish a history of profitability. Point denied.

In its second point on appeal, Plaintiff claims the trial court erred in granting Defendant summary judgment because genuine issues of material fact exist as to whether Plaintiff suffered lost profits. More specifically, Plaintiff contends that the record established with reasonable certainty, or created genuine factual issues, as to whether: Plaintiff agreed to buy 741,837 tons of slurry from AFI for $7.50 per ton; Plaintiff intended to blend AFI's slurry with coal mined from its existing mine operations; Plaintiff intended to sell the blended coal to its existing customers under existing contracts; Plaintiff contemplated profits resulting from the sale of blended coal; Plaintiff could have sold the coal to its existing customers for an average of $29.56 per ton; and the DNR would have issued a permit revision for the sale of AFI's slurry to Plaintiff.

As previously discussed, Missouri law is clear that an established business may recover anticipated profits only where there is proof of income and expenses for the period prior to the alleged injury to the business. *Coonis*, 429 S.W.2d at 714. In this case, the uncontroverted evidence established that Plaintiff was not generating a profit prior to Defendant's alleged fraudulent misrepresentation and Plaintiff's consequent decision not to purchase AFI's slurry. In the absence of evidence of past profitability, as required by *Coonis*, Plaintiff cannot prove damages. *See, e.g., Brown,* 722 S.W.2d at 341 (holding that plaintiff, who did not present the indispensable proof of net profits generated by defendant during a reasonable period prior to his dismissal, failed to prove lost profits with reasonable certainty); *Rich v. Eastman Kodak Co.,* 583 F.2d 435, 437 (8th Cir.1978) (applying Missouri law) (holding that "[s]ummary judgment in favor of [the defendant] is fully supported by the absence of any genuine issue of material fact concerning damages" where the plaintiffs anticipated profits were "too speculative and conjectural to sustain any verdict.").

Even if this court were to disregard the requirement that Plaintiff establish a history of profitability and treat Plaintiff as a new business, Plaintiff has not demonstrated a genuine issue of material fact concerning damages. While new businesses are not required to present historical data to recover lost profit, "new businesses labor under a greater burden of proof in overcoming the general rule that evidence of expected profits is too speculative, uncertain, and remote to be considered ...." *Tipton v. Mill Creek Gravel Inc.,* 373 F.3d 913, 918 (8th Cir.2004) (applying Missouri law). Lost profits are recoverable only "if they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount." *Id.*

Recovery of lost profits is "prohibited when there is uncertainty or speculation as to whether the loss of profits was the result of the wrong, and whether any such profits would have derived at all." *Thoroughbred Ford, Inc.,* 908 S.W.2d at 735 (quotation omitted).

Based on our review of the record, we conclude that the record does not support Plaintiff's allegations that Defendant's misrepresentation caused Plaintiff to sustain lost profits. "Conclusory allegations are not sufficient to raise a question of fact in summary judgment proceedings." *Syngenta Crop Protection, Inc. v. Outdoor Equipment Co.,* 241 S.W.3d 425, 428 (Mo. App. E.D.2007). Additionally, "[m]ere speculation does not create a genuine issue of material fact; rather, the record must demonstrate factual questions that would permit a reasonable jury to return a verdict for the non-moving party." *Rustco Products Co. v. Food Corn, Inc.,* 925 S.W.2d 917, 923 (Mo.App. W.D.1996).

The record also does not support and, in fact, undermines Plaintiff's claim that it would have successfully blended AFI's slurry with its Tiger Mine coal and sold the blended product. The only evidence Plaintiff presented concerning the quality of AFI's slurry—which related to the test sample that Plaintiff extracted from AFI's waste pond—established that the quality was poor. In his deposition, King stated that "the stuff that came up from AFI's slurry pit was not really coal." King testified that Plaintiff blended a small amount of the test slurry with its Tiger Mine coal and sold the blended coal to its customer Trigen, but King considered that product to be of poor quality. King further stated that Plaintiff did not ship the City of Independence any of the blended "experimental coal" because the City of Independence was "ultra sensitive to coal quality."

Despite the admittedly poor quality of the test sample, Plaintiff asserts that it could have extracted high quality slurry from AFI's waste pond, blended it with its Tiger Mine coal, and sold the blended coal at a profit. These assertions are premised entirely on King's untested belief that better slurry than that previously extracted by Plaintiff was located in different areas of AFI's waste pond.[4] Plaintiff also maintains that, because the coal from AFI's Blue Mound Mine had a higher BTU[5] than Plaintiff's Tiger Mine coal, AFI's *slurry* also had a higher BTU than Plaintiff's Tiger Mine coal. Based on this assumption, Plaintiff further supposes that, blending AFI's slurry with Plaintiff's Tiger Mine coal, would increase the Tiger Mine coal's BTU. However, Plaintiff presented no evidence of the BTU levels of AFI's slurry or the test sample of blended coal.

Plaintiff's claims that its existing customers would have purchased the hypothetical blended coal under existing contracts for unmixed Tiger Mine coal are similarly premised on speculation. Plaintiff argues that "it had existing coal contracts with customers for the sale of coal" and "[t]hose contracts did not prohibit the sale of blended coal." However, Plaintiff presents no evidence to suggest that any of its existing customers were willing to purchase the blended coal, let alone purchase the blended coal at the same price

---

4. King attributed the slurry sample's poor quality to the location of the extraction and testified that the "I never considered [the slurry sample as] even remotely resembling what we would have extracted from that pit eventually."

5. BTU, or British thermal unit, is a standard measurement used to denote the amount of heat energy in fuels.

for which it purchased unmixed coal.[6] Speculation, assumptions, and hopeful expectations as to future sales will not support a claim for lost profits. *See, e.g., Ozark Employment Specialists v. Beeman,* 80 S.W.3d 882, 897 (Mo.App. W.D.2002); *Gesellschaft Fur Geratebau,* 967 S.W.2d at 147; *Brown,* 722 S.W.2d at 341.

Based on the above, we find that Plaintiff failed to demonstrate that a material question of fact exists as to whether Defendant's alleged misrepresentation caused Plaintiff to lose anticipated profits on the sale of its proposed blended coal product. Because the evidence upon which Plaintiff relies is simply too speculative and conjectural to create a genuine question of fact as to lost profits, the trial court did not err in granting Defendant's motion for summary judgment. Point denied.

■ In its third and final point on appeal, Plaintiff claims the trial court erred in overruling Plaintiff's motion for partial summary judgment on the issue of Defendant's liability. More specifically, Plaintiff claims it was entitled to partial summary judgment because the doctrine of collateral estoppel barred Defendant from relitigating those facts necessarily determined by the jury in *Alternate Fuels,* including the fact that Defendant "intentionally and un-

justifiably misrepresented to [Plaintiff] that 'as long as I'm here, that [permit change] won't happen.'" Defendant moved to strike Plaintiff's Point III on the grounds that the denial of a motion for partial summary judgment is not a final, appealable order and Plaintiff failed to include this point in its notice of appeal. This court ordered Defendant's motion to strike taken with the case.

Denial of a motion for summary judgment is interlocutory and therefore not a final, appealable order. *Cook's Fabrication & Welding, Inc. v. Mid–Continent Cas. Co.,* 364 S.W.3d 639, 646 (Mo.App. E.D.2012). However, where the merits of the denied motion for summary judgment are inextricably intertwined with the issues of an appealable order granting summary judgment to another party, the denial of a motion for summary judgment may be reviewed on appeal. *Id.; Dhyne v. State Farm Fire & Cas. Co.,* 188 S.W.3d 454, 456 n. 1 (Mo. banc 2006).

We find that Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment are not sufficiently intertwined to justify departure from the general rule that the denial of a summary judgment is not appealable. The parties' respective motions for summary

---

**6.** In its response to Defendant's motion for summary judgment, Plaintiff alleged that: "Midwest Coal did remove 2,500 tons of coal fines from Alternate Fuels [sic] pits pursuant to an exploratory permit, blended it with its Tiger Mine coal and sold it to Trigen, who had no complaints about the quality." However, King acknowledged in his deposition testimony that Plaintiff retained no documentation concerning the shipment of blended coal to Trigen. Additionally, the evidence does not establish that the blending of the test product and its sale to Trigen were successful, as King's testimony in this regard was, at best, inconsistent.

In his deposition for the *Alternate Fuels* case, King also stated that the blended coal

that Plaintiff provided Trigen "was not very good and it did not work for them" because it was "bad quality." In his later deposition taken in preparation for the instant case, King retreated from these earlier statements, stating that he did not know whether the blended coal worked for Trigen but "was giving my own opinion." King also stated in the later deposition that Trigen's general manager did not complain about the blended coal it purchased from Plaintiff. "[A] party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistencies into the record in order to demonstrate a genuine issue of fact." *ITT,* 854 S.W.2d at 388.

judgment raised different legal and factual issues. Plaintiff's motion for partial summary judgment sought the application of collateral estoppel to establish Defendant's liability for fraudulent misrepresentation, and Defendant's motion for summary judgment related to Plaintiff's ability to prove damages. The facts that Plaintiff claimed were determined by the *Alternate Fuels* court were not intertwined with the facts underlying the claim for lost profits. As Defendant correctly asserts in its motion to strike, "the trial court could have granted [Plaintiff's] motion as to partial liability and still granted [Defendant's] motion finding insufficient damages." *Cf. Lopez v. Am. Family Mut. Ins. Co.*, 96 S.W.3d 891, 892 (Mo.App. W.D.2002) ("Here, the sole issue appears to be an issue of law, and the Lopezes [sic] motion for summary judgment is intertwined with American Family's. Indeed, the denial of one motion leads directly to the conclusion that the other should be granted.").

Furthermore, Plaintiff failed to include in its notice of appeal the trial court's order denying its motion for partial summary judgment. Rule 81.08(a) provides: "The notice of appeal shall specify . . . the judgment or order appealed from. . . ." Missouri courts are lenient with respect to a failure to specify the judgment or order appealed from if the lack of specificity does not prejudice the other party. *Rea v. Moore*, 74 S.W.3d 795, 801 (Mo.App. S.D. 2002). "However, that leniency has occurred primarily in cases where the appellant sought to appeal one judgment or order." *Id.* By contrast, Missouri courts "have not shown such leniency when the notice of appeal only listed one judgment or order, but the points on appeal referred to more than one judgment or order." *Id.* Accordingly, Defendant's motion to strike Plaintiff's third point on appeal is granted.

## Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, J., and ROBERT M. CLAYTON III, J., concur.