

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| TELESTER AMEENA POWELL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD78138 |
| | ) | |
| THE CITY OF KANSAS CITY, | ) | Opinion filed: October 6, 2015 |
| MISSOURI, ET AL., | ) | |
| | ) | |
| Respondents. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE S. MARGENE BURNETT, JUDGE**

Before Division One: Cynthia L. Martin, Presiding Judge,
Joseph M. Ellis, Judge and James E. Welsh, Judge

Telester Powell appeals from a judgment entered in the Circuit Court of Jackson County granting summary judgment in favor of the City of Kansas City ("the City") in an action Appellant filed against the City for alleged Sunshine Law violations. For the following reasons, the judgment is affirmed.

On October 5, 2011, the City sent a letter to Appellant notifying her of its intent, pursuant to § 523.250, to exercise its power of eminent domain to acquire her property located at 2611 Brooklyn St. in Kansas City, Missouri in order to build an "East Patrol Campus" for the Kansas City, Missouri Police Department. The letter to Appellant was signed by Michael Patillo, a Senior Acquisition Specialist for the City's Capital Projects

Department. On November 2, 2011, Appellant sent Patillo a certified letter proposing an alternative site for the project and formally requesting "the engineering reports, surveys and other documents" associated with the City's review of the viable sites for the East Patrol Campus project. The letter was received by Patillo on November 4, 2011. Neither Patillo nor the City responded to that letter.

On June 28, 2012, the City Council passed an ordinance authorizing the condemnation of Appellant's property for public use. On July 23, 2012, the City filed its petition in condemnation pursuant to § 82.240 seeking a fee simple interest in Appellant's property. After conducting a hearing, on October 2, 2012, the Circuit Court entered its order authorizing the City's condemnation of the property. A jury trial was conducted on May 28, 2013, to determine the fair market value of the property, and pursuant to the jury's verdict, the City was ordered to pay Appellant $55,000.00 for the property. The circuit court's judgment was affirmed by this court on appeal. *City of Kansas City v. Powell*, 451 S.W.3d 724, 745 (Mo. App. W.D. 2014).

On July 17, 2013, acting *pro se*, Appellant filed a "Verified Petition to Enforce Sunshine Law" against the City based upon its failure to respond to her November 2, 2011 letter requesting "engineering reports, surveys and other documents" related to the East Patrol Campus Project. Five days later, she filed her "Verified Amended Petition to Enforce Sunshine Law." The City was served on April 11, 2014, and it timely filed an Answer and a Motion to Dismiss the Amended Petition. On May 28, 2014, Appellant filed her "Verified Second Amended Petition to Enforce Sunshine Law and for Statutory Damages and Injunctive Relief."[1] On June 4, 2014, the City filed its Motion to

---

[1] In the caption of this final petition, Appellant added Sherri McIntyre, Director of Public Works for the City, as a party. However, McIntyre is not mentioned anywhere in the averments of the petition.

Dismiss the Second Amended Petition based on the one-year statute of limitations set forth in § 610.027.5. Appellant responded by filing her Opposition to the Motion to Dismiss.

On July 9, 2014, the circuit court heard argument on the motion to dismiss and *sua sponte* decided to treat the motion to dismiss as a motion for summary judgment and granted the parties time for additional briefing and argument. On July 23, 2014, Appellant filed an Amended Reply and Opposition to the Motion to Dismiss. After hearing additional argument, on October 10, 2014, the circuit court entered its judgment granting summary judgment in favor of the City and ordering costs assessed against Appellant. Appellant's subsequent Motion for New Trial or in the Alternative to Amend Judgment was denied by the court. Appellant, again acting *pro se*, brings four points on appeal.

In her first point, Appellant claims that the circuit court erred as a matter of law in assessing costs against her after having granted her motion to proceed as a poor person, which had been filed along with her original petition. She argues that, once a plaintiff is granted leave to prosecute their action as a poor person, none of the costs of the action can be legally charged to them.[2] This Court reviews questions of law *de novo*. **Randolph v. Missouri Hwys. & Transp. Comm'n**, 224 S.W.3d 615, 617 (Mo. App. W.D. 2007).

---

[2] For its part, the City "officially takes no position on the arguments contained in Appellants Point I" but then asserts that any error is harmless because the City has not made any claim for costs associated with the case and has no intention to do so. In making this latter assertion, the City fails to recognize that court costs may be billed by the court to a plaintiff and that the legal file in this case contains an itemized "Cost Billing Statement" sent by the circuit court's Cost Accounting Department to Appellant.

On August 28, 2013, the court entered its order stating:

> The Court, having considered the Motion and Affidavit in Support of Request to Proceed as a Poor Person, finds that Telester A. Powell is without sufficient funds or assets with which to pay the advance deposit for costs of this action and, therefore, is granted leave to proceed as a poor person and the required advanced deposit for costs is waived.

Subsequently, in its judgment granting the City's motion for summary judgment, the circuit court ordered costs assessed against Appellant.[3] Appellant argues that, having found her to be a poor person and granted her leave to proceed as a poor person, the circuit court could not later order her to pay any costs associated with the action.

In support of her argument that the court, having previously found her to be a poor person, erred as a matter of law in ordering her to pay costs, Appellant relies on *Isbell v. Biederman Furniture Company*, 115 S.W.2d 46 (Mo. App. E.D. 1938). In *Isbell*, after having granted the plaintiff permission to prosecute her suit as a poor person, the court granted the defendant's motion to dismiss the petition for failure to state a cause of action and ordered that "defendant have and recover of the plaintiff the costs of this suit, and have therefor execution." *Id*. at 48. On appeal, the plaintiff challenged the propriety of the award of costs. *Id*. at 51. In addressing that point, the *Isbell* court simply stated:

> The second assignment of error, which challenges the correctness of the trial court's action in adjudicating the costs against plaintiff, and authorizing the issuance of an execution against her, is well taken. The plaintiff was granted permission by the trial court to prosecute her suit as a poor person in accord with the provisions of section 1240, R.S.Mo. 1929, Mo.St.Ann. § 1240, p. 1467. Said section, after reciting such action of the court, reads as follows: "thereupon such poor person shall have all necessary process and proceedings as in other cases, without fees, tax or charge."[4]

---

[3] The circuit court later denied Appellant's motion to proceed *in forma pauperis* on appeal.
[4] Section 1240, RSMo 1929 provided:

4

> It follows, therefore, that the judgment of the trial court . . . in taxing costs and authorizing execution therefor against plaintiff, should be, and is, reversed.

*Id*.

Since *Isbell* was decided, the statutory language applicable to indigent plaintiffs has been significantly amended. The relevant statutory provision, § 514.040.1,[5] the successor statute to § 1240, RSMo 1929, now provides, in relevant part:

> [I]f any court shall, before or after the commencement of any suit pending before it, be satisfied that the plaintiff is a poor person, and unable to prosecute his or her suit, and pay **all or any portion of the costs and expenses thereof**, such court may, in its discretion, permit him or her to commence and prosecute his or her action as a poor person, and thereupon such poor person shall have all necessary process and proceedings as in other cases, without fees, tax or charge **as the court determines the person cannot pay**[.]

(emphasis added). Based upon the statutory changes, the circuit court is now vested significant discretion to order a plaintiff found to be a poor person to pay any portion of the costs and expenses it finds the plaintiff is able to pay. The statute no longer makes it an all or nothing proposition. Accordingly, *Isbell* has no application to the case at bar.

We recognize that in **Roberson v. State**, 140 S.W.3d 634, 638-39 (Mo. App. W.D. 2004), this Court appears to have reached a contrary conclusion regarding the changes to the statutory language and the continued applicability of *Isbell*. In

---

> If any court shall, before or after the commencement of any suit pending before it, be satisfied that the plaintiff is a poor person, and unable to prosecute his or her suit, and pay the costs and expenses thereof, such court may, in its discretion, permit him or her to commence and prosecute his or her action as a poor person, and thereupon such poor person shall have all necessary process and proceedings as in other cases without fees, tax or charge; and the court may assign to such person counsel, who, as well as other officers of the court, shall perform their duties in such suit without fee or reward; but if judgment is entered for the plaintiff, costs shall be recovered, which shall be collected for the use of the officers of the court.

[5] All statutory references are to RSMo 2000 as updated through 2011 unless otherwise noted.

*Roberson*, this Court noted that "[s]ection 514.040.1 provides that when the plaintiff in a civil case is permitted to sue as a poor person, 'such poor person shall have all necessary process and proceedings as in other cases, without fees, tax or charge as the court determines the person cannot pay.'" *Id*. at 638. The Court then noted that in *Isbell* "[i]dentical language in one of the predecessor versions of this statute, section 1240, RSMo 1929, [was] interpreted as prohibiting the recovery of costs against a plaintiff who was permitted to proceed as an indigent" and that "[b]ecause the language of section 1240, RSMo 1929, provided, like the current section 514.040.2 [sic], that 'such poor person shall have all necessary process and proceedings as in other cases, without fees, tax or charge,' the [*Isbell*] court reversed the assessment of costs against the appellant." *Id*. at 638-39. This Court held that "section 514.040, read in its entirety and with Rule 29.15, provides that an indigent Rule 29.15 movant is not only not required to pay a cost deposit, but is also not required to pay costs at any other stage of the proceedings." *Id*. at 639.

We believe the application of *Roberson* was meant to be limited to indigent post-conviction relief movants under Rules 29.15 and 24.035. To the extent that *Roberson* may be read to imply that the present language of § 514.040.1 is identical to § 1240, RSMo 1929, and that the current statute does not allow for the court to assess any costs against any plaintiff granted leave to proceed as a poor person, it should no longer be followed. The language of the respective statutes is clearly not identical, and the unambiguous language of § 514.040.1 grants the circuit court discretion to assess to a poor person whatever costs the court determines that person can pay.

The circuit court in the case at bar entered an order finding that Appellant was "without sufficient funds or assets with which to pay the *advance deposit for costs* of this action" and granted her "leave to proceed as a poor person" and waived "the *required advanced deposit for costs*." After later deciding to grant summary judgment in favor of the City, the court assessed costs against Appellant in its judgment, implicitly finding that she was able to pay such costs.[6] The court subsequently denied Appellant's motion to amend the judgment to remove such costs. Appellant makes no claim on appeal that the circuit court abused its discretion in ordering her to pay those costs,[7] and having gratuitously reviewed the record, we are not left with the impression "that the circuit court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice."[8] *Sasnett v. Jons*, 400 S.W.3d 429, 441 (Mo. App. W.D. 2013) (internal quotation omitted). Point denied.

Appellant's second and third points contend that the trial court erred in granting summary judgment on each of the two counts set forth in her petition.[9] "Our review of a

---

[6] The circuit court billed Appellant for a total of $112.00 in costs related to the action below.

[7] "The award of costs is a matter within the circuit court's sound discretion, and we will not disturb the award absent a showing of an abuse of discretion." *Sasnett v. Jons*, 400 S.W.3d 429, 441 (Mo. App. W.D. 2013). "To demonstrate an abuse of discretion, the appellant must show that the circuit court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.* (internal quotation omitted).

[8] We note that the trial court's order waived the *"advanced deposit for costs,"* and said nothing about waiving all costs associated with the action. We further observe that Appellant was awarded $55,000 in damages in the condemnation action, that this Court handed down the opinion affirming that $55,000 damage award on October 7, 2014, and the trial court entered its judgment assessing costs of $112.00 against Appellant three days later, on October 10, 2014. Thus, while the trial court apparently believed that Appellant was without the funds necessary to pay the *advanced deposit* for costs when the action was commenced, it was clearly aware that Appellant had been awarded $55,000 in damages in the condemnation action and that the judgment had been affirmed on appeal, at the time it entered its judgment assessing costs. Under those circumstances, the court clearly did not abuse its discretion.

[9] Both Appellant's second and third points assert multifarious claims in violation of Rule 84.04. "A single point relied on that groups multiple, disparate claims is multifarious, does not comply with Rule 84.04, and generally preserves nothing for appellate review." *Mansfield v. Horner*, 443 S.W.3d 627, 653 (Mo. App. W.D. 2014) (internal quotation omitted). However, because we are generally able to understand the nature of the claims presented in the point and because the City was clearly able to understand and effectively address those claims in its responsive brief, we exercise our discretion to review Appellant's

grant of summary judgment is essentially *de novo*." ***Lucero v. Curators of Univ. of Mo.***, 400 S.W.3d 1, 4 (Mo. App. W.D. 2013) (internal quotation omitted). "The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propriety of sustaining the motion initially." ***Frye v. Levy***, 440 S.W.3d 405, 407 (Mo. banc 2014) (internal quotation omitted). "Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." ***Id.*** (internal quotation omitted). "A 'defending party' may establish a right to summary judgment by showing (1) facts that negate any of the claimant's necessary elements; (2) that the claimant, after an adequate period of discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of the facts required to support the movant's properly pleaded affirmative defense." ***Nail v. Husch Blackwell Sanders, LLP***, 436 S.W.3d 556, 561 (Mo. banc 2014).

"The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." ***Shiddell v. Bar Plan Mut.***, 385 S.W.3d 478, 483 (Mo. App. W.D. 2012) (internal quotation omitted). "However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." ***Id.*** (internal quotation omitted). "We may affirm the circuit court's grant of summary

---

claims *ex gratia*. *See **Id.***; ***Kerns v. State***, 389 S.W.3d 749, 751 n.2 (Mo. App. S.D. 2012); ***Medlin v. RLC, Inc.***, 423 S.W.3d 276, 283 n.9 (Mo. App. S.D. 2014).

judgment under any theory that is supported by the record." *Lucero*, 400 S.W.3d at 4 (internal quotation omitted).

In her second point, Appellant claims that the trial court erred in entering summary judgment in favor of the City on the first count of her petition. In that count, she asserted that, pursuant to § 523.265, the City was required to respond in writing to her proposed alternative location for condemnation and that the City violated § 610.023 of the Sunshine Law by failing to produce such a document for her inspection within three days of her November 2, 2011 letter. On appeal, Appellant contends that summary judgment was improperly entered because she sufficiently stated a claim for which relief could be granted and her claim was not barred by the statute of limitations.

Section 523.265 provides:

> With regard to property interests acquired by condemnation or negotiations in lieu of the exercise thereof, within thirty days of receiving a written notice sent under section 523.250, the landowner may propose to the condemning authority in writing an alternative location for the property to be condemned, *which alternative location shall be on the same parcel of the landowner's property as the property the condemning authority seeks to condemn*. The proposal shall describe the alternative location in such detail that the alternative location is clearly defined for the condemning authority. The condemning authority shall consider all such alternative locations. *This section shall not apply to takings of an entire parcel of land*. A written statement by the condemning authority to the landowner that it has considered all such alternative locations, and briefly stating why they were rejected or accepted, is conclusive evidence that sufficient consideration was given to the alternative locations.

(Emphasis added).

As the circuit court correctly noted, § 523.265 was not applicable to the condemnation of Appellant's property because that statute expressly provides that it "shall not apply to takings of an entire parcel of land." Indeed, in *City of Kansas City v.*

9

***Powell***, 451 S.W.3d 724, 737 (Mo. App. W.D. 2014), this Court noted that the City had sought to acquire Appellant's property in its entirety and that § 523.265 was not applicable to takings of an entire parcel of land. Moreover, contrary to the dictates of § 523.265, the alternative locations proposed by Appellant were improper because they were not located "on the same parcel of the landowner's property." Accordingly, the circuit court properly concluded that the City did not have an obligation under § 523.265 to consider Appellant's proposed alternative sites for the project.[10]

Furthermore, as to her alleged Sunshine Law violation, § 610.023 only applies to public records in the City's possession. The undisputed facts reflect that no document was ever created responding to Appellant's proposed alternative locations.

Even if, however, the City had considered Appellant's proposed alternative locations and created a written record of its reasons for rejecting them, Appellant's letter does not request the production of such a document so as to constitute a request under the Sunshine Law. The request for documents contained in that letter stated, "During your presentation you claimed that you adequately reviewed 25 other possible sites. Please consider this a formal request for the engineering reports, surveys and other documents associated with your review of these other, viable sites." Accordingly, Appellant's request only referenced records related to the sites that had already been considered and did not relate to the alternative locations Appellant was proposing in her letter. Moreover, as will be discussed in greater detail *infra*, Appellant's suit was

---

[10] In addition, contrary to Appellant's assertions, § 523.265 does not require the issuance of written statements from the condemning authority. All that is required by the statute is that the condemning authority consider the alternative locations suggested by the landowner. ***§ 523.265***. While certainly suggestive of the value of written statements responding to landowners who have proposed alternative sites and establishing that such written statements issued by the condemning authority are conclusive evidence that the condemning authority sufficiently considered the proposed sites, it does not mandate that such written statements be issued. Sufficient consideration could certainly be proven by other means.

10

brought outside the one year statute of limitations set forth in § 610.027.5 for Sunshine Law violations.

For all of the foregoing reasons, summary judgment was properly entered in favor of the City on the first count of Appellant's petition. Point denied.

In her third point Appellant claims that the circuit court erred in entering summary judgment on the second count of her petition which contended that the City violated § 610.023 of the Sunshine Law by failing, within three days of the receipt of her November 2, 2011 letter, to allow her to inspect and copy the "engineering reports, surveys and other documents" associated with the alternative locations for the project that had been considered by the City prior to settling on the chosen location. She contends that the circuit court erroneously concluded that her claim was barred by the one-year statute of limitations contained in § 610.027.5.

Section 610.027.5 provides, in relevant part, that any suit for enforcement related to a violation of the Sunshine Law "shall be brought within one year from which the violation is ascertainable and in no event shall it be brought later than two years after the violation."[11] The undisputed facts establish that Appellant made her request in a letter sent November 2, 2011, and that she received a return receipt informing her that it

---

[11] The full text of Section 610.027.5 provides:

> Upon a finding by a preponderance of the evidence that a public governmental body has violated any provision of sections 610.010 to 610.026, a court shall void any action taken in violation of sections 610.010 to 610.026, if the court finds under the facts of the particular case that the public interest in the enforcement of the policy of sections 610.010 to 610.026 outweighs the public interest in sustaining the validity of the action taken in the closed meeting, record or vote. **Suit for enforcement shall be brought within one year from which the violation is ascertainable and in no event shall it be brought later than two years after the violation**. This subsection shall not apply to an action taken regarding the issuance of bonds or other evidence of indebtedness of a public governmental body if a public hearing, election or public sale has been held regarding the bonds or evidence of indebtedness.

(Emphasis added).

11

had been received by the City on November 4, 2011. Accordingly, when she had not received any response from the City or been otherwise allowed to inspect and copy the requested documents within three business days of the City's receipt of the letter, Appellant could readily have ascertained the alleged violation of the Sunshine Law. Appellant did not file her petition asserting a violation of the Sunshine Law until July 17, 2013, over a year and eight months later. On this basis, the circuit court concluded that the undisputed facts established that the second count of Appellant's petition was barred by the statute of limitations and that summary judgment should be entered in favor of the City on that basis.

Appellant contends that the circuit court's application of § 610.027.5 was erroneous in multifarious ways. First, she claims that § 610.027.5 is inapplicable because that subsection provides that it "shall not apply to an action taken regarding the issuance of bonds or other evidence of indebtedness of a public governmental body if a public hearing, election or public sale has been held regarding the bonds or evidence of indebtedness." Appellant argues that, because the East Patrol Campus project was to be funded by a ¼ cent public safety sales tax and federal grant assistance, public indebtedness was involved and § 610.027.5 was inapplicable to her request.

As noted by the circuit court, Appellant's document request related only to "engineering reports, surveys and other document associated with [the City's] review of other, viable sites" for the project. The requested documents had nothing to do with the issuance of bonds or other indebtedness of a governmental body. The exception contained in § 610.027.5 is clearly inapplicable to this case.

12

Appellant next argues that, under the language of § 610.027.5, she had two years in which to file her action and that the circuit court erred as a matter of law in concluding otherwise. As noted *supra*, the relevant language provides that any suit for enforcement related to a violation of the Sunshine Law "shall be brought within one year from which the violation is ascertainable and in no event shall it be brought later than two years after the violation." Appellant argues that the plain language of this provision and the use of the conjunctive term "and" therein granted her up to two years to file her petition.

Appellant's reasoning in this regard is largely indiscernible.[12] What is clear is that she wholly misinterprets the plain language of the relevant statutory provision. It unambiguously provides that an action asserting a violation of the Sunshine act must be brought within one year of the date it becomes ascertainable and that under no circumstances may such an action be brought more than two years after the violation actually occurred, even if the violation never becomes ascertainable. Accordingly, it allows for an action to be filed either one year from when the violation becomes ascertainable or two years from the date of the violation, whichever comes first. In this case, the one year limitations provision of § 610.027.5 clearly applied because, based upon the undisputed facts, the violation was readily ascertainable by November 8, 2011.

Finally, Appellant contends that her filing of a Sunshine Law violation complaint with the Missouri Attorney General on October 26, 2012, tolled the running of the statute of limitations while her complaint was being considered by the Attorney General. She

---

[12] The rationale appears to be based on an erroneous view that, whenever the term "and" is used, the items on either side of the term must be mathematically of equal value.

13

further argues that, if the statute of limitations is not tolled under such circumstances, it should be deemed unconstitutional.

Appellant cites no authority for these propositions, and we have found none. The language of § 610.027.5 is clear and unequivocal that any action for a violation of the Sunshine Law must be brought within one year from which the violation is ascertainable. The fact that the Attorney General is also empowered to file an action related to a violation of the Sunshine Law and that Appellant has asked him to do so does not somehow extend the time in which one or both of them must file an action in the circuit court. We fail to perceive how failing to toll the statute of limitations under these circumstances could be deemed unconstitutional. Point denied.

In her final point, Appellant claims that the circuit court erred in denying her motion for new trial based upon the erroneous conclusion that motions for new trial and motions to amend the judgment are inappropriate where summary judgment has been entered. In response, the City asks that Appellant's point be dismissed based upon Appellant's failure to reference the order denying Appellant's motion for new trial in her Notice of Appeal.

Pursuant to Rule 81.08(a), a notice of appeal must specify the judgment or order appealed from, *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 751 (Mo. App. W.D. 2011), and appellate courts are "confined to review the decision identified in the notice of appeal." *Maskill v. Cummins*, 397 S.W.3d 27, 32 (Mo. App. W.D. 2013). "[T]echnical adherence to the formal averments of a notice of appeal is not jurisdictional, and the averments are to be liberally construed to permit appellate review so long as the opposing party is not misled to his or her irreparable harm." *McCrainey*, 337

14

S.W.3d at 751 (internal quotation omitted). However, while "Missouri courts are lenient with respect to a failure to specify the judgment or order appealed from if the lack of specificity does not prejudice the other party," "that leniency has occurred primarily in cases where the appellant sought to appeal one judgment or order." *Midwest Coal, LLC v. Cabanas*, 378 S.W.3d 367, 376 (Mo. App. E.D. 2012). "Missouri courts have not shown such leniency when the notice of appeal only listed one judgment or order, but the points on appeal referred to more than one judgment or order." *Id*. (internal quotation omitted).

In her notice of appeal, Appellant stated that she was challenging the circuit court's entry of summary judgment, and she made no mention of the order denying her motion for new trial. In addition, the summary judgment was the only judgment or order attached to her notice of appeal.[13] Accordingly, this Court's review is confined to that judgment. *Schrader v. QuikTrip Corp.*, 292 S.W.3d 453, 456 (Mo. App. E.D. 2009). Because Appellant failed to reference the circuit court's order denying her motion for new trial in her notice of appeal or to attach that order to her notice, her claim on appeal related thereto is not properly preserved for appellate review and is, therefore, dismissed. *Id*.

We gratuitously note that, in its order denying Appellant's motion for new trial, the circuit court clearly misstated the law in declaring that motions for new trial and motions to amend the judgment are improper where summary judgment has been entered.[14]

---

[13] *See* **Wills v. Whitlock**, 139 S.W.3d 643, 658 (Mo. App. W.D. 2004) (holding that Rule 81.08(a) was sufficiently complied with where, while only one of two judgments entering summary judgment against the appellant was referred to in the notice of appeal, both judgments were attached to the notice of appeal).

[14] In its order denying Appellant's motion, the circuit court stated:

> [T]he Court notes that this matter was adjudicated pursuant to a Motion to Dismiss (which this Court treated as a Motion for Summary Judgment pursuant to Rule 274.04

15

*See* **Taylor v. United Parcel Serv., Inc.**, 854 S.W.2d 390, 392-93 (Mo. banc 1993) (holding that the plaintiff's motion to reconsider summary judgment should be treated as a motion for new trial and declaring that "[f]or purposes of the rules, a summary judgment proceeding is a trial because it results in a judicial examination and determination of the issues between the parties.") (internal quotation omitted); *see also* **Bailey v. Innovative Mgmt. & Inv.**, 890 S.W.2d 648, 649 (Mo. banc 1994) ("A motion for reconsideration of a ruling granting summary judgment that disposed of all issues in a case is treated as a motion for new trial for purposes of determining when the notice of appeal must be filed under Rule 81.05(a)."); **State ex rel. Boyer v. Perigo**, 979 S.W.2d 953, 956 n.4 (Mo. App. S.D. 1998) ("[F]or purposes of the rules of civil procedure, a summary judgment proceeding is a 'trial,' because it results in a judicial examination and determination of the issues between the parties.") (internal quotation omitted).[15]

However, even if this claim of error had been properly preserved for appellate review, it would not warrant reversal of the circuit court's judgment because Appellant cannot establish any prejudice resulting from the circuit court's refusal to entertain the merits of her motion. *See* **Bryan v. Peppers**, 323 S.W.3d 70, 74 (Mo. App. S.D. 2010) ("We will not reverse a judgment absent a showing of prejudice."); **Rule 84.13(b)** ("No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action."). This

---

with notice to all parties on July 9, 2014). Judgment Granting Summary Judgment was entered on October 14, 2014. Therefore, there was neither a bench nor jury trial held and Rules 78.04 and 78.07 do not apply. As a result, Plaintiff 's Motion should be DENIED.

[15] "On appeal we treat summary judgments as the equivalent of court-tried cases and do not require that such judgments be preserved for review in motions for new trial." **Hatch v. V.P. Fair Found., Inc.**, 990 S.W.2d 126, 138 (Mo. App. E.D. 1999).

16

Court has reviewed the trial court's decision to enter summary judgment *de novo* and determined that, in light of the undisputed facts, the City was entitled to judgment as a matter of law. Accordingly, even had the trial court considered the merits of Appellant's motion for new trial, as a matter of law, it would have been required to deny that motion.

The judgment is affirmed.[16]

Joseph M. Ellis, Judge

All concur.

---

[16] Appellant has filed a Motion for Attorney Fees and Costs on Appeal, which was taken with the case, in which she requested an award of attorney fees and costs under provisions in § 610.027 of the Sunshine Law that authorize an award of attorney fees and costs to a prevailing party when a public governmental body has been proven to have knowingly or purposefully violated provisions of the Sunshine Law. As Appellant has not prevailed at either the trial court level or on appeal, that motion is denied.